## UNITED STATES

### v.

### Eric J. BROWN, 036 44 8837, Seaman (E-3), U.S. Naval Reserve.

### NMCM 90 3775.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 14 June 1990.

Decided 28 Aug. 1992.

LT Robert G. Arrambide, JAGC, USNR, Appellate Defense Counsel.

CDR Howard C. Cohen, JAGC, USNR, Appellate Defense Counsel.

LT T.S. Susanin, JAGC, USNR, Appellate Government Counsel.

Before WILLEVER, STRICKLAND and ORR, JJ.

PER CURIAM:

Contrary to his pleas, the appellant was convicted of a violation of clause 3 of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, for transferring a classified message, of which he had lawful possession, to a person not entitled to receive it in violation of 18 U.S.C. § 793(d). The appellant was sentenced to a dishonorable discharge, confinement for 2 years, forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority approved the adjudged sentence but granted clemency to the appellant and suspended all confinement in excess of eighteen months.

We have examined the record of trial, the assignments of error,[1] the Government's response, and we have heard oral argument. We conclude that the findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the appellant was committed.

■ The appellant's case "involved national security" as defined by Section 0149a(2)(a), Manual of the Judge Advocate General (JAGMAN), JAGINST 5800.7B of 1 July 1978,[2] since he was charged with violating the Federal Espionage Act. Accordingly, Section 0116 of the JAGMAN limited those officers who could act as the convening authority in this case. The appellant's court was convened and the charges referred by an officer designated

1. I. ABSENT SUFFICIENT PROOF OF APPELLANT'S ACTUAL KNOWLEDGE OF THE CONTENTS OF THE MESSAGE, THE EVIDENCE IS INSUFFICIENT FOR CONVICTION OF AN OFFENSE BASED UPON 18 U.S.C. § 793(d).
II. THE INTENT OF CONGRESS IN ENACTING ARTICLE 22 [10 U.S.C. § 822] IS CONTRARY TO THE IMPLEMENTATION OF NAVAL INSTRUCTIONS WHICH WOULD ALLOW, IN THE CIRCUMSTANCES OF THIS CASE, THE DISCRETION TO CONVENE A GENERAL COURT–MARTIAL TO DEVOLVE UPON A NON–FLAG CHIEF OF STAFF.
III. APPELLANT WAS DENIED DUE PROCESS IN THAT THE STAFF JUDGE ADVOCATE IMPROPERLY COMMENTED ON APPELLANT EXERCISING HIS RIGHT TO TRIAL THEREBY ADVERSELY IMPACTING ON THE CONVENING AUTHORITY'S ACTION.

2. This version of the JAGMAN was in effect at all pertinent times in this case.

in Section 0116, namely, the Commander, Naval Surface Force, U.S. Atlantic Fleet (COMNAVSURFLANT). The "individual" who signed the convening order and the referral block on the charge sheet was a Navy Captain who was the acting commander at the time.

There is no dispute that this Navy Captain was properly acting as the commander, pursuant to Navy Regulations, at the time these actions were taken. It is appellant's position, however, that because the Secretary limited who could act in a national security case, that the actual commander must personally take action in such a case and that a temporary successor to the command cannot properly act. Thus, he argues that his court was improperly convened, the error was jurisdictional, and the court was a nullity.

The essence of appellant's argument is that the convening authority in this case derives his power to convene a general court-martial by virtue of being designated to do so by the Secretary pursuant to Article 22, UCMJ, 10 U.S.C. § 822. This designation occurs in JAGMAN, Section 0115, which provides that "[a]ll flag or general officers, or their immediate temporary successors, in command of units or activities of the Navy or Marine Corps" are designated as empowered to convene general courts-martial. Appellant asserts, however, that the restriction on the exercise of this power in cases involving national security is limited only to the individual commander and not any successor to command because the language in JAGMAN, Section 0116f(3)(c), provides that "authority ... is withheld from all officers of the naval service except those listed below." In furtherance of this theory, appellant urged at oral argument that those positions designated in this section were typically manned by officers of the grade of 0–9 or above, such as the convening authority in this case whose billet is that of a Vice Admiral. Appellant reasons that the seniority of these positions together with the language used to limit this authority, as compared to the broader language of Section 0115, im-

plies an intent by the Secretary that only the commander, not a temporary successor to command, be authorized to convene courts-martial in national security cases. We disagree.

■ We first note that all of the commanders designated by JAGMAN, Section 0116, are not serving in the grade of 0–9 or 0–10 as appellant argues and thus do not meet his own definition of "very senior commanders." For example, the Commanding General of a Marine Corps Base is typically a Brigadier General, an 0–7. Consequently, we can conclude that grade alone is not dispositive of the Secretary's intent in limiting the authority of those who may dispose of cases involving national security. The question is not the grade of the commander designated by Section 0116 but whether the Secretary intended to further limit this authority only to actual commanders.

U.S. Navy Regulations establish who may succeed to command and the authority of one who does.[3] Article 0817.1 provides, "[a]n officer who succeeds to command due to incapacity, death, departure on leave, detachment without relief, or absence due to orders from competent authority of the officer detailed to command has the same authority and responsibility as the officer whom he succeeds." Article 0855 sets forth guidance for succession to command of, *inter alia*, a subdivision of a fleet (COMNAVSURFLANT is a subdivision of Commander–in–Chief, U.S. Atlantic Fleet). Article 0855.3 provides, in pertinent part:

An officer succeeding to command shall have authority to issue orders required to carry on the established routine and to perform the administrative functions of the command. He shall be the officer commanding for the time being for the administration and for the exercise of general court martial jurisdiction within the command.

It is clear from the foregoing provisions that the Secretary specifically intended that an officer succeeding to command have the same authority as the actual com-

**3.** U.S. Navy Regulations, 1973, were in effect at all times in this case.

manding officer to include the responsibilities of a general court-martial convening authority.

Given this distinct mandate, the question becomes whether the Secretary in limiting those who could dispose of national security cases intended to also limit this authority granted by Navy Regulations? We believe he did not. If such a result was intended, we believe that Section 0116 of the JAGMAN would have specifically contained such a limitation. Therefore we conclude that the actions taken by the successor to command in this case to convene a general court-martial and refer the charges to this court were valid.

We have considered the remaining assignments of error, find them to be without merit, and reject them.

The findings and sentence, as approved on review below, are affirmed.