UNITED STATES, Appellee,

v.

Eric J. BROWN, Seaman
U.S. Navy, Appellant.

No. 93–0064.
CMR No. 90–3775.

U.S. Court of Military Appeals.

Argued Dec. 2, 1993.
Decided March 23, 1994.

For Appellant: *Captain Hagen W. Frank,* USMC (argued); *Commander Howard C. Cohen, JAGC, USNR* (on brief).

For Appellee: *Lieutenant D.K. Herlihy, JAGC, USNR* (argued); *Colonel T.G. Hess, USMC and Lieutenant Commander Lawrence W. Muschamp, JAGC, USN* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

Periodically, from March through June of 1990, appellant was tried by a military judge sitting alone as a general court-martial at the Naval Legal Service Office, Norfolk, Virginia. He was found guilty of willfully transmitting "a Defense Intelligence Agency message relating to the national defense" to an unauthorized person, in violation of 18 USC § 793(d) and Article 134, Uniform Code of Military Justice, 10 USC § 934. On June 14, 1990, appellant was sentenced to a dishonorable discharge, confinement for 2 years, total forfeitures, and reduction to pay grade E–1. The convening authority, on December 5, 1990, suspended confinement in excess of 18 months for 12 months beginning on the day the sentence was adjudged. The Court of Military Review affirmed in an opinion dated August 28, 1992. 35 MJ 854.

On February 24, 1993, this Court granted review of the following issue:

WHETHER APPELLANT'S GENERAL COURT–MARTIAL LACKED JURIS-DICTION WHERE, ALTHOUGH THE

CHARGES INVOLVED NATIONAL SE-
CURITY, THE COURT–MARTIAL WAS
NOT CONVENED BY AN OFFICER
AUTHORIZED TO DISPOSE OF NA-
TIONAL SECURITY CASES BUT BY
THE TEMPORARY SUCCESSOR IN
COMMAND TO SUCH OFFICER.

We hold that appellant's court-martial had jurisdiction over the charges brought against him. *United States v. Williams,* 6 USCMA 243, 19 CMR 369 (1955); *see United States v. Yates,* 28 MJ 60 (CMA 1989); *United States v. Jette,* 25 MJ 16 (CMA 1987).

The facts and circumstances surrounding appellant's assigned issue were noted by the Court of Military Review as follows:

The appellant's case "involved national security" as defined by Section 0149a(2)(a), Manual of the Judge Advocate General (JAGMAN), JAGINST 5800.7B of 1 July 1978, since he was charged with violating the Federal Espionage Act. Accordingly, Section 0116 of the JAGMAN limited those officers who could act as the convening authority in this case. The appellant's court was convened and the charges referred by an officer designated in Section 0116, namely, the Commander, Naval Surface Force, U.S. Atlantic Fleet (COM-NAVSURFLANT). The "individual" who signed the convening order and the referral block on the charge sheet was a Navy Captain who was the acting commander at the time.

There is no dispute that this Navy Captain was properly acting as the commander, pursuant to Navy Regulations, at the time these actions were taken. It is appellant's position, however, that because the Secretary limited who could act in a national security case, that the actual commander must personally take action in such a case and that a temporary successor to the command cannot properly act. Thus, he argues that his court was improperly convened, the error was jurisdictional, and the court was a nullity.

■ The essence of appellant's argument is that the convening authority in this case derives his power to convene a general court-martial by virtue of being designated to do so by the Secretary pursuant to Article 22, UCMJ. This designation occurs in JAGMAN, Section 0115, which provides that "[a]ll flag or general officers, or their immediate temporary successors, in command of units or activities of the Navy or Marine Corps" are designated as empowered to convene general courts-martial. Appellant asserts, however, that the restriction on the exercise of this power in cases involving national security is limited only to the individual commander and not any successor to command because the language in JAGMAN, Section 0116f(3)(c), provides that "authority ... is withheld from all officers of the naval service except those listed below." In furtherance of this theory, appellant urged at oral argument that those positions designated in this section were typically manned by officers of the grade of 0–9 or above, such as the convening authority in this case whose billet is that of a Vice Admiral. Appellant reasons that the seniority of these positions together with the language used to limit this authority, as compared to the broader language of Section 0115, implies an intent by the Secretary that only the commander, not a temporary successor to command, be authorized to convene courts-martial in national security cases. We disagree.

35 MJ at 854–55.

– – –

Appellant complains that his general court-martial was unlawfully convened by Captain R. W. Holly, "Acting" Commander of the Naval Surface Force, U.S. Atlantic Fleet, Norfolk, Virginia. He notes that Vice Admiral J.S. Donnell III was the actual, albeit absent, Commander of Naval Surface Force, U.S. Atlantic Fleet, at the time his court-martial was convened. He further asserts that naval-service regulations did not grant an acting commander the authority to convene courts-martial for national-security cases. Accordingly, he concludes that the court-martial which found him guilty of a national-security offense was unlawful and a

nullity. *See generally* RCM 201(b)(1). Manual for Courts–Martial, United States, 1984.[1] We disagree.

Our starting point in resolving this complaint is Article 22, UCMJ, 10 USC § 822.[2] At the time that appellant's court-martial was convened and charges were referred, that statute provided "(a) General courts-martial may be convened by— ... (8) *any other commanding officer designated by the Secretary concerned* .... " (Emphasis added.) In this regard, we further note § 0115, Manual of the Judge Advocate General[3] (JAGMAN), JAGINST 5800.7B (1 July 1978).[4] At the time that appellant's court-martial was convened, it stated:

**0115 CONVENING AUTHORITY**

a. *Designation of additional convening authorities*

(1) *General courts-martial.* In addition to those officers authorized by article 22(a)(3) through (5) and (7), UCMJ, the following officers are, under the authority granted to the Secretary of the Navy by article 22(a)(6), UCMJ, designated as empowered to convene general courts-martial:

(a) All flag or general officers, *or their immediate temporary successors, in command of units* or activities *of the Navy* or Marine Corps.

Change 5 (emphasis added).

Finally, the parties to this appeal do not dispute that the Naval Surface Force, U.S. Atlantic Fleet, is a unit of the Navy and that Captain Holly was immediate temporary suc-

cessor within the meaning of the above regulation.

Appellant's specific argument is that § 0116, JAGMAN, precluded the acting commander of this naval unit from convening his court-martial. It is premised on his reading of the two naval regulatory provisions together and his application of general principles of statutory construction. He frankly recognizes the general grant of court-martial convening authority to "immediate temporary successors" found in § 0115a(1)(a), JAGMAN. Nevertheless, he particularly notes that this same language of empowerment was not later used in § 0116f(3)(c), JAGMAN, with respect to national-security courts-martial. Thus, he concludes that the specific and later pronouncement controls the general and earlier edict and, therefore, his court-martial was not properly convened. *See generally* 2A Sutherland, *Statutory Construction* § 46.05 at 105 (5th ed. 1992 Revision).

Section 0116f(3)(c), JAGMAN, in effect at the time of appellant's court-martial, stated:

(c) *Limitations on Convening Authority.* Under RCM 306(a) and 401(a), MCM, 1984, *authority to dispose of cases involving national security, as* defined in subsection 0149a(2)(a), *is withheld from all officers of the naval service except those listed below.* All officers otherwise empowered to dispose of offenses who receive reports or charges of offenses involving national security shall, after taking action prescribed in subsection 0116f(3)(a), forward such reports or charges for disposi-

1. **Rule 201 Jurisdiction in general**

 \* \* \*

   (b) *Requisites of court-martial jurisdiction.* A court-martial always has jurisdiction to determine whether it has jurisdiction. Otherwise for a court-martial to have jurisdiction:
   (1) The court-martial must be convened by an official empowered to convene it....

2. Article 22 was amended in 1986 (effective date Oct. 1). The amendment stated, *inter alia*, that the secretarial designation of convening authorities previously provided in Article 22(a)(6) would be renumbered as Article 22(a)(8).

3. The Manual of the Judge Advocate General contains regulations for the Department of the Navy that are authorized by:

(a) 5 USC § 301 (Authority to Issue Departmental Regulation)[;]
(b) 10 USC §§ 801–940 (Uniform Code of Military Justice)[;] and
(c) Manual for Courts–Martial, United States,
...

It is approved by the Secretary of the Navy.

4. The Manual of the Judge Advocate General (JAGINST 5800.7B) was amended on April 22, 1987 (Change 6) and September 29, 1988 (Change 7), and it was promulgated anew on October 3, 1990. Only § 0120 of JAGINST 5800.7C references the changes to Article 22(a)(6) and (8) noted in footnote 2, *infra*.

tion directly and without delay to an appropriate officer listed below:

    (i) Chief of Naval Operations;

    (ii) Commandant of the Marine Corps;

    (iii) Commanders in Chief, U.S. Atlantic and Pacific Fleets, and U.S. Naval Forces, Europe;

    (iv) Commanding Generals, Fleet Marine Forces, Atlantic and Pacific;

    (v) Commanders, Sixth and Seventh Fleets;

    (vi) *Commanders, Naval* Air, Submarine, and *Surface Forces, U.S. Atlantic* and Pacific *Fleets;*

    (vii) Chief of Naval Education and Training;

    (viii) Commanding General, Marine Corps Development and Education Command, Quantico, Virginia; and

    (ix) Commanding Generals, Marine Corps Bases, Camp Lejeune, Camp Pendleton, and Camp S.D. Butler[.]

(Emphasis added.) Admittedly, it did not contain "the immediate temporary successors" language of § 0115. However, in our opinion, this difference in wording does not create an "inescapable conflict" requiring the jettisoning of the more general regulation. *See Sutherland, Statutory Construction, supra.*

It is well established in military law that the power to convene courts-martial "is to the office, and not to the particular person who occupies the office at the time of the grant." *United States v. Bunting,* 4 USCMA 84, 87, 15 CMR 84, 87 (1954). This principle of law is clearly reflected in § 0115a(1)(a), JAGMAN, which generally implemented the Secretary of the Navy's power to designate convening authorities provided in Article 22(a)(8). The words, "All flag or general officers" do not stand alone but are used in conjunction with the words "in command of units or activities of the Navy. . . ." Moreover, the words "their immediate temporary

successors" effectively convey the above principle by expressly providing for the contingency of the commander's absence from the command. *See United States v. Williams,* 6 USCMA at 245–46, 19 CMR at 371–72.

Section 0116f(3)(c), JAGMAN, is entitled *"Limitations on Convening Authority"* and clearly applies to all convening authorities previously empowered by § 0115, JAGMAN. It contains no express prohibition against an acting commander convening such a national security court-martial. In this context, the failure to restate the "office" principle of military law can be reasonably viewed as not creating inescapable conflict but avoiding mere redundancy. Accordingly, we accept the Navy–Marine Corps court's construction of this service regulation as authorizing the convening of appellant's court-martial by the "acting" commander of Naval Surface Force, Atlantic Fleet. *Cf. United States v. Moultak,* 24 MJ 316, 318 (CMA 1987).

■ In any event, this Court has been especially reluctant to invalidate convictions by courts-martial simply because those courts were convened by "de facto" commanders. *See United States v. Yates* and *United States v. Jette,* both *supra.* Admittedly, our irregular-referral cases do not address the situation where the commander's authority to convene courts-martial derives from secretarial designation rather than from express codal denomination. Nevertheless, this Court recently applied the "de facto" commander rationale in a post-trial review situation requiring appropriate secretarial designation. *See United States v. Watson,* 37 MJ 166 (CMA 1993). Moreover, it seems particularly appropriate where there is no express regulatory prohibition against acting commanders performing an otherwise authorized referral function. *See also* Articles 0817.1 and 0855.3, U.S. Navy Regulations, 1973.[5] In view of Captain Holly's conceded

---

5. Article 0817, U.S. Navy Regulations, 1973, provides:

  **0817. Authority of an Officer Who Succeeds to Command.**

  1. An officer who succeeds to command due to incapacity, death, departure on leave, detachment without relief, or absence due to orders from competent authority of the officer detailed to command has the same authority and responsibility as the officer whom he succeeds.

status as an acting commander, we, therefore, conclude that affirmance of appellant's case is also appropriate on this basis.

Finally, we note that Vice Admiral Donnell, as Commander, Naval Surface Force, U.S. Atlantic Fleet, approved the sentence in this case in accordance with Article 60, UCMJ, 10 USC § 860. The Government has suggested that any error in the referral of appellant's case to court-martial by Captain Holly was cured by the actual commander's later ratification of this referral. *See United States v. Brown*, 38 CMR 909 (AFBR), *pet. denied*, 18 USCMA 613, 38 CMR 441 (1968); *United States v. Morgan*, 6 CMR 462 (NBR 1952). In the past, this Court has not openly embraced this legal theory as a means to cure referral defects which directly violate codal commands. *See United States v. Greenwalt*, 6 USCMA 569, 574, 20 CMR 285, 290 (1955). However, our reluctance dissipates where the referral irregularity stems from inartfully worded service regulations which were not challenged at trial or shown to confer substantial benefits on an accused. Art. 59(a), UCMJ, 10 USC § 859(a). *See also United States v. Wilkins*, 29 MJ 421 (CMA 1990) (failure to follow regular referral procedures waived by reason of defense action).

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX, CRAWFORD, and WISS concur.

GIERKE, Judge (concurring):

I agree with the majority's disposition of the granted issue. I write separately to distinguish this case from *United States v.*

2. An officer who succeeds to command during the temporary absence of the commanding officer shall make no changes in the existing organization, and shall endeavor to have the routine and other affairs of the command carried on in the usual manner.
3. When an officer temporarily succeeding to command signs official correspondence, the word "Acting" shall appear below his signature.
Article 0855.3, U.S. Navy Regulations, 1973, provides:

*Watson*, 37 MJ 166, 168 (CMA 1993), in which I dissented.

In *Watson* action was taken by an officer outside appellant's chain of command whose secretarial grant of authority expressly excluded authority over appellant's unit. In the case before us we have an action taken by an officer of appellant's unit who assumed command of the unit in accordance with Navy regulations.

We need not resort to any *de facto* rationale in this case because the Navy captain who convened the court-martial was the commander for all purposes. As noted by the Court of Military Review, the applicable Navy regulation vested the captain with "the same authority and responsibility as the officer whom he succeed[ed]." Article 0817.1, U.S. Navy Regulations, 1973.

In my view the applicable provisions of §§ 0115 and 0116, Manual of the Judge Advocate General (JAGMAN), JAGINST 5800.-7B, are consistent. The phrase in § 0115, "or their immediate temporary successors," modifies the preceding phrase, "[a]ll flag or general officers," and makes it clear that officers below flag rank may succeed to command and exercise general court-martial authority. The modifying phrase was unnecessary in § 0116f(3)(c)(vi) because the commanders listed in that subsection were identified by position and not by rank or grade as they were in § 0115, making it unnecessary to add words of inclusion for officers below the customary grade for the named positions.

I agree fully that the Navy captain who convened appellant's court-martial was authorized by Article 22, Uniform Code of Military Justice, 10 USC § 822, and Navy regulations to do so. Accordingly, I concur.

3. An officer succeeding to command shall have authority to issue orders required to carry on the established routine and to perform the administrative functions of the command. He shall be the officer commanding for the time being for the administration and for the exercise of general court-martial jurisdiction within the command. This shall not be construed to limit the authority and responsibility of the senior officer present in emergency or other foreseen situations which demand his action.